## CAYTON *v.* CHARLES H. WALKER, JAMES H. PRIEDMORE, AND SOPHRONIA PRIEDMORE.

Where C., T., S. P., J. H. P., and W., were partners in the ownership of a saw-mill, and carrying on the mill business, and subsequently they executed an instrument, C., T., and W., of the first part, and S. P., and J. H. P., of the second part, which ran as follows: "The party of the first part have bargained, sold, and by these presents do convey unto the party of the second part, all their right, title, and interest, in and to a certain saw-mill," etc., and this clause was followed with certain stipulations as to the manner of payment of the consideration-money, with a condition that if the party of the second part fail to comply, then the property to be delivered up to the party of the first part, to be used and disposed of to pay the consideration: *Held*, that the conveyance of the property is not, in any degree, dependent upon the performance of the conditions. The transfer is *in presenti*.

The condition that the party of the second part shall deliver up the property, upon a failure to comply with its terms, to the party of the first part, to be sold by them to pay the debts of the firm outstanding, then to pay the balance over to the party of the second part, is only a trust retained upon the property sold, which may be enforced like any other trust. A Court of Equity would enforce it as a mortgage or vendor's lien.

Nor would such an instrument be invalid, because, under the facts of this case, one of the parties named in the caption as parties of the first part, did not sign the same, especially where such party does not complain, and the rights of the other partners are in no degree affected by it.

Such an agreement as that here set out is a bar to an action by bill, of one of the partners against the others, for an account and dissolution, and sale of the partnership property.

APPEAL from the District Court of the Ninth Judicial District, County of Shasta.

A statement of the facts appears in the opinion of the Court.

*Isaac Baggs* for Appellants.

Written agreements are presumed to be the intention and will of the parties thereto; and Courts, in construing written agreements, will give force and effect to all of their parts, in accordance with the intention of the parties thereto.

In the case of Von Schmidt *v.* Huntington, 1 Cal., 55, this subject is ably discussed by Judge Bennett. The same doctrine, to some extent, is held in the case of Tewksbury *v.* Laffan, 1 Cal., 129. Where promises are dependent, neither party can maintain an action against the other without showing performance, or an offer to perform. Osborne et al. *v.* Elliott et al., 1 Cal.,

337; Green and Younger v. Wells, 2 Cal., 584. A partnership may be dissolved by the wrongful acts of one of the parties. Crosbey v. McDermit, 7 Cal., 146.

By the foregoing authorities, and the agreement filed in answer, as between the parties hereto, I come to the conclusion that the contract is in the nature of a deed, and, for the purposes of a conveyance, passes all the title of the parties of the first part in and to the property described in said deed, so far as the parties thereto are concerned.

We admit that, previous to February 26, 1856, there was a copartnership between Walker, Cayton, Thomas, and Priedmore, but contend that by the agreement entered into, the copartnership existing before that time was on that day dissolved by the acts of all the parties thereto. A partnership may be dissolved in various ways—either by publication in a newspaper, or by any means by which the fact may be made known in reference thereto, either as among themselves or those who were in the habit of dealing with the firm.

Story on Contracts lays down the doctrine that partners differ from part owners, etc. See Story on Contracts, §§ 211–235, which will sustain me in the positions I have taken with reference to the disposition of partnership, etc. As to the interpretation of agreements, see the same authority. §§ 640–643. As to conditions precedent, and conditions subsequent, see same authority. §§ 28–33.

*Thos. H. Williams* for Appellants.

Partnerships may be dissolved by consent of parties, and a sale or assignment of the interest of one or more of the partners is *ipso facto* a dissolution. See Collyer on Part., 99, § 110.

I claim that the instrument contains language of conveyance *in presenti* of their interest, and there being no proviso or reservation of such interest in any manner whatever, it operated as an absolute sale.

We find no such language as "if the parties of the second part fail to pay, etc., this conveyance shall be void," or "inoperative," or "the parties of the first part may re-enter and take possession of the interest hereby conveyed;" but we see that the so-called condition applies to the whole property—not merely the interest of Cayton and Thomas—and provides that all shall be delivered to them for the purpose of paying the purchase-sum agreed upon; it, therefore, was more like a mortgage than a condition subsequent.

And plaintiff, upon the principle which has been stated, shows expressly in the complaint a dissolution, because he sets forth that Thomas, a member of the firm, had sold out to him a few days before commencing the suit; he brought this action to dissolve the partnership of Cayton, (the plaintiff,) J. H. Priedmore,

and Walker, which had never existed, for the complaint shows that the plaintiff, Priedmore, Walker, and Thomas, were the firm which had been in existence.    It is very clear that if Mrs. Pried-more and others failed to comply with their agreement, the only remedy plaintiff had (and especially after purchasing Thomas' interest,) was to sue for damages or specific performance; and if so, then the action which was brought must fail.

If any portion of the property would, under other circumstan-ces, be considered realty, still, for the purposes of carrying on their business, etc., it would, whilst part of the partnership ef-fects, be held personalty.    Collyer on Part., 148, § 154.    And each partner's interest would be only his proportion of the resi-due after payments of all debts, liabilities, etc.    Ib., 115, § 125. Therefore, a deed of assignment would not be necessary to con-vey the interest of one of the partners.    Ib., 791, § 895.

A case similar to this is referred to in Collyer on Partnership, 796, § 895, and especial attention to it is directed.

*Sprague and McMurtry* for Respondents.

This agreement was intended as a conditional sale of Cayton, Thomas, and Walker's interest in the mill-property, to wit, the undivided one-half.    This agreement was never executed by Walker, and its conditions were never complied with by J. H. and S. Priedmore.

·There is no question but that this mill, mill-dam, and water-race, and the land upon which the same are located, is real es-tate; and the entire saw-mill, appurtenances, and fixtures were, at the date of said agreement, partnership property of Walker & Co.    This contract, certainly, was no legal conveyance of the interest of Walker and Thomas.    It was simply a conditional agreement to convey, and without a compliance with the condi-tions precedent on the part of J. H. and S. Priedmore, a Court of Equity would never compel Cayton and Thomas to convey.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This was a bill for the dissolution of a copartnership and the settlement of account.·    The case made by the complaint is, that on the twenty-sixth of February, 1856, and for some time before, the plaintiff and defendants, Charles H. Walker, J. H. Priedmore, and one Albert Thomas, as partners, were, and had been in pos-session, and were the owners of a saw-mill and appurtenances and fixtures, in the county of Shasta.    This partnership did business, and held this property, under the firm of Walker & Co. The partnership built the mill, and carried on the business.    The interest of plaintiff, Walker and Thomas, was a sixth each, and of Priedmore three-sixths.    On the twenty-sixth of February, the firm was indebted $1400—when plaintiff and Thomas with-

drew from the active participation in the partnership and business, and left the business and property in the possession of the other partners, Priedmore and Walker. In March, 1856, defendant, Sophronia Priedmore, became a sole trader, and took the control of the mill company, and assumed to carry on the mill business in her own name as sole trader; and since the twenty-fifth of March, 1856, defendants have had the possession of the mill property, and the management and control of the business, and received the profits—the business being conducted under the name of Sophronia Priedmore—that during the time the defendants have occupied the premises and carried on the business, plaintiff and Thomas have paid the debts of Walker & Co., amounting to $230, and $500 of these debts is still outstanding. The bill charges that defendants have refused to account for rents and profits of the mill-property or business, and declare and set up that plaintiff and Thomas have no interest in the property and business, and that Thomas has sold his interest to the plaintiff. The bill sets out the probable profits, and the articles of firm property—prays for an account and dissolution—sale of the firm property to pay the debts, and for distribution of the balance remaining.

The defendants, J. H. and Sophronia Priedmore, answered. The answer sets up, in defence, among other things, an agreement, (which is appended to the answer,) made between J. H. and Sophronia Priedmore, and plaintiff, and Thomas. As the construction of this agreement is decisive of the case as it is now presented, we insert a copy. It is as follows:

" OAK RUN, Shasta County, State of California.
" An article of agreement by and between Wm. Cayton, Albert Thomas, and Charles H. Walker, of the first part, and Sophronia Priedmore, and J. H. Priedmore, of the second part: The party of the first part have bargained, sold, and by these presents do convey unto the party of the second part, all their right, title, and interest, in and to a certain saw-mill on Oak Run, near its head, together with all the tools employed in building the same that belong to said mill-company, carts under construction, bob-sleds, all saw-logs cut in the woods, or logs in said mill-yard, dwelling-house, etc. The party of the second part agree to pay for the above-specified property, to the party of the first part, the following sums and considerations, to wit: *First*, two hundred dollars in cash two months from the date of this article; or deliver unto John Taylor, or any one he may name, ten thousand feet of lumber, at the mill; and continue to pay monthly two hundred dollars in cash until they have paid the just and full sum of twenty-two hundred dollars; or continue to deliver monthly ten thousand feet of lumber until the just and full sum of one hundred thousand feet be delivered. *Second*, the above-

specified sums of money, or the money accruing from the sales of the above-specified sums of lumber, is to be paid in the following manner : all the creditors that the parties of the first and second parts are jointly indebted to, the balance that remains of the twenty-two hundred dollars is to be given to the party of the first part, and it shall be a final settlement of all company accounts between the said parties of the first and second parts. *Third,* if the party of the second part fail to comply with the conditions in the above agreement in any particular, then the party of the second part agrees to deliver up to the party of the first part the above-specified property ; and the party of the first part agree to do the best they can with the property to make twenty-two hundred dollars out of the same, and first pay the debts jointly owed by the parties of the first and second parts, and the remainder, if there be any, to be paid to the party of the second part. They shall, also, have the right to make any improvements or alterations that they may see fit, or sell said property to pay said indebtedness, and it shall be payment in full by them for said property. In witness whereof we have set our names, this February 26, 1856.

> " WILLIAM CAYTON,
> " ALBERT THOMAS,
> " SOPHRONIA PRIEDMORE,
> " J. H. PRIEDMORE."

For the respondent, it is insisted—*first,* that this agreement is merely conditional, to take effect as a conveyance only upon the compliance by the defendants with its terms; *second,* that the agreement was not signed by one of the parties named in the caption, (Walker,) and, therefore, was inoperative as to all. Certainly, it must be conceded that the instrument is not drawn with the utmost precision, or with much respect to form. But we think the meaning of it can be gathered, with tolerable accuracy, from the language employed. It has been seen that the bill has not been framed with any reference to this agreement, but proceeds upon the original rights of the plaintiff as if no such instrument existed.

We do not agree with the counsel for the respondent, that the conveyance of the property is, in any degree, dependent upon the performance of the stipulations in this agreement. The transfer seems to be *in presenti.* " The parties of the first part bargain, sell, and convey to the party of the second part, the property," etc. In another portion of this deed is contained the stipulations and consideration of this conveyance, and the consequence of the violation of the agreement upon the part of the defendants is distinctly set forth. It amounts to an agreement to surrender the property on this failure to the party of the first part, to be sold by them to pay the debts of the firm outstand-

ing, then to pay the balance over to the party of the second part. It is at best only a trust retained upon the property sold; which may be enforced like any other trust.    A Court of Equity would enforce it as a mortgage or vendor's lien; or, possibly—though we do not decide this—the agreement might be specifically enforced, or damages might be recovered for a breach of the agreement.    The remedy, in whatever form, is simple and adequate. It could never have been intended that, upon a failure to pay a portion of the money provided to be paid by the agreement— the last instalment, for example—the whole agreement was to be void, and that the plaintiff, without expending capital or labor, or risking anything, should be entitled to call for an account as a partner in the concern from the period when the agreement was made.    In truth, that was not his relation.    He had sold out his entire interest.    He gave no further attention to the business.    The defendants were let into possession under the contract; and, at their own cost, in their own name, at their own risk, and for their own profit, carried on this concern.    And this is the evident purpose of the contract.    The plaintiff and Thomas desired only to be secured in the payment of the price to be given, and against the debts of the old firm, and, for that purpose, provided for their security by taking a trust, with a power of sale.    And it seems that, under this agreement, the defendants went into possession, advanced their own money and gave their services, and in their own names conducted the business.

Conceding that the plaintiffs, before and in the absence of this agreement, had, or would have, a right to go into equity for a dissolution and account, they could not afterwards.    What they had a right to settle in Court, the parties might settle without judicial action.    The agreement was evidently intended to close up the whole business.    They took the security of a new contract, with new liabilities in substitution of their original rights. By this, the relations of the parties have been changed.    The greater portion of the outstanding indebtedness has been discharged, and it nowhere appears that the defendants are not able to pay the balance; and for the small portion paid by plaintiff, he has an ample remedy.

The objection that Walker did not sign the agreement, is not well founded, for the purpose of invalidating or showing the invalidity of the arrangement.    He does not complain.    It is not shown that the rights of the other partners are in any degree affected by the failure of Walker to sign, nor that the instrument was not to be effectual without his signature.    The other partners were acting upon their own rights, not Walker's.    And though the form of the instrument seems to have contemplated at the time the execution by all, yet the fact that Walker did not sign, and no complaint was made for so long a time, and the

carrying out the agreement by those who did, leaves the inference that the parties were satisfied with it as it stood. Besides, Walker seems to have acquiesced in the arrangement, and contributed to give it effect. The long silence of Thomas and plaintiff, under the circumstances, and their suffering defendants to go on and make their expenditures and carry on the new enterprise, would, in equity, preclude them from insisting upon such a defect of execution, even if, under any circumstances, they could do so. Moreover, it is clear to us that the plaintiff and Thomas, not contributing anything as partners, or claiming to be such, and apparently, both by words and acts, abandoning the concern and all participation therein, can not claim to be partners in the profits of an adventure, when they could not have been held responsible to defendants for losses.

On the whole case, we think the agreement a bar to the action; and we therefore reverse the decree below, and dismiss the bill, without prejudice to any rights which the plaintiff may choose to set up in a different form of action.